IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PIETRO A. BARBIERI, ESQ., <u>ET</u> <u>AL</u>,** : | CIVIL ACTION |
| **Plaintiffs,** : | |
| : | |
| v. : | No. 16-3748 |
| : | |
| **THE UNITED STATES OF** : | |
| **AMERICA, <u>ET</u> <u>AL</u>.,** : | |
| **Defendants.** : | |

**Goldberg, J.** September 28, 2017

## MEMORANDUM OPINION

Plaintiffs Pietro A. Barbieri, Esquire, ("Mr. Barbieri") and his wife, Jean Marie Barbieri ("Mrs. Barbieri"), have sued the United States of America ("the United States"), Assistant United States Attorney Anita Eve ("AUSA Eve"), and FBI Special Agent Brian Cosgriff ("Agent Cosgriff") under a theory of wrongful investigation and subsequent indictment of Mr. Barbieri. Agent Cosgriff is alleged to have performed a flawed investigation, and AUSA Eve is alleged to have pursued an indictment in retaliation against Mr. Barbieri for his assertion of the attorney-client privilege.

Presently before me are all Defendants' motions to dismiss the Amended Complaint. For the reasons that follow, the Defendants' motions will be granted, and the claims against the United States, AUSA Eve, and Agent Cosgriff will be dismissed.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

The following facts, viewed in the light most favorable to Plaintiff, are derived from Plaintiff's First Amended Complaint.

1

Mr. Barbieri is an attorney experienced in bankruptcy law. He was indicted by a federal Grand Jury on May 27, 2014 on charges of bankruptcy fraud related to money wired to his escrow account from his then-client, Debra Messner ("Messner").

Mr. Barbieri began working with Messner in 2008, initially, on what appears to be a family court matter regarding what Plaintiff refers to as a "qualified domestic relations order," and subsequently pursuing child support from Messner's husband. Thereafter, Mr. Barbieri worked with Messner to prepare and file a bankruptcy petition on Messner's behalf. During Messner's deposition for the bankruptcy proceedings, she admitted to a series of crimes. Also during the deposition, the United States Trustee inquired about a wire transfer into one of Mr. Barbieri's escrow accounts. The deposition was briefly stopped, and when continued, Mr. Barbieri advised Messner to secure the assistance of a criminal attorney. Mr. Barbieri later determined that, unbeknownst to him, approximately $22,000.00 had been wire-transferred into one of his attorney escrow accounts. Mr. Barbieri immediately notified the United States Trustee and alleges that at a hearing in bankruptcy court on January 12, 2010, the Honorable Jean K. FitzSimon concluded that he never took possession of the money, never claimed ownership of the money, and turned the funds over to the United States Trustee within three minutes. (Am. Compl. ¶¶ 14, 20-22, 27, 30-34, 36-39.)

The United States Trustee's Office subsequently filed a complaint regarding Messner's activities, which was referred to the United States Attorney's Office and the Federal Bureau of Investigation ("FBI") for further investigation. AUSA Eve was the designated prosecutor on the case, and Agent Cosgriff was the designated investigator.

Agent Cosgriff initially interviewed Messner after serving her with a target letter on August 26, 2010. In that interview, Messner stated that she did not try to conceal the transfer of

funds after her bankruptcy filing, but did not officially notify the bankruptcy judge of the transfer because "her attorney gave her bad advice." (Id. ¶¶ 41-44.)

Subsequently, Agent Cosgriff interviewed Messner's former employer. Following that interview, AUSA Eve subpoenaed Messner's client file that was in Mr. Barbieri's possession. In a series of letters between Mr. Barbieri, AUSA Eve, and Messner's public defender, AUSA Eve continued to demand that Mr. Barbieri turn over Messner's client file. She again subpoenaed the file on August 2, 2011. Mr. Barbieri told AUSA Eve that in order for him to deliver the file she needed to obtain the proper waiver from Messner or a court order. AUSA Eve did not contact Mr. Barbieri again until June 13, 2013, when she again subpoenaed the file without having obtained a waiver or court order. Mr. Barbieri ultimately complied with the AUSA Eve's request and turned over his client file. (Id. ¶¶ 50-55, 58, 62.)

Sometime around December 12, 2013, Agent Cosgriff met with Messner. At that meeting, he inquired about an account with an online brokerage firm that Messner had failed to report in her bankruptcy paperwork. When asked about the account, Messner initially denied she had one, but later admitted she did. Messner told Agent Cosgriff that she knowingly left the account out of her bankruptcy paperwork because Mr. Barbieri told her she did not need to report it. Messner also said that she had wired $22,000.00 directly into one of Mr. Barbieri's escrow accounts to pay her legal bills from the online brokerage account. (Id. ¶¶ 63, 65-66, 70-72.)

On May 20, 2014, Mr. Barbieri received a target letter from the United States Attorney's Office. Other than learning that the investigation was related to Messner's bankruptcy, Mr. Barbieri was unable to gather any further information before he was indicted on May 27, 2014 on charges of bankruptcy fraud related to the $22,000.00 wired to his escrow account, as well as

misrepresentations Messner made to the United States Trustee. Mr. Barbieri was acquitted by a jury on January 16, 2015. (Id. ¶¶ 83-85, 87, 89-90, 103.)

Mr. Barbieri now contends that AUSA Eve and Agent Cosgriff did not independently investigate and corroborate Messner's allegations and failed to interview Mr. Barbieri and multiple witnesses prior to the indictment, in violation of the FBI Manual of Investigative Operations and Guidelines ("Guidelines"). Instead, "motivated by resentment, contempt, and the desire for payback against Mr. Barbieri based on Mr. Barbieri's refusal to capitulate to Defendant Eve's demands for Messner's confidential client records," they "chose to engage in an ersatz, sham investigation of Mr. Barbieri." In furtherance of this "sham investigation," Mr. Barbieri alleges that AUSA Eve and Agent Cosgriff presented testimony in the May 15, 2014 Grand Jury session that "consisted of patently false and misleading information." For example, Mr. Barbieri alleges that Agent Cosgriff falsely stated that Mr. Barbieri represented Messner throughout her divorce proceedings. Mr. Barbieri also contends that Agent Cosgriff "appeared at [his] office without notice or warrant in violation of [his] Fourth Amendment rights" seventy-two hours before trial began, and "began interviewing [his] employees." (Id. ¶¶ 73-74, 76-83, 94-97, 102.)

As to the United States, Mr. Barbieri alleges that it is vicariously liable for acts performed by AUSA Eve and Agent Cosgriff in connection with the investigation and indictment. Regarding AUSA Eve, Mr. Barbieri alleges that she violated his Fifth Amendment rights when she sent a "deficient" target letter with "insufficient notice," and also when she made misrepresentations during a presentation to the Grand Jury, resulting in an improper indictment. Finally, Mr. Barbieri alleges that Agent Cosgriff violated his Fifth Amendment rights by lying and making misrepresentations during a presentation to the Grand Jury, resulting in an improper

4

indictment. Additionally, he alleges that Agent Cosgriff violated his Fourth Amendment rights by conducting a "sham investigation" that helped to secure the indictment, and making an "unannounced, warrantless, and unconstitutional search" of Mr. Barbieri's office, which included interviewing Mr. Barbieri's staff. (Id. ¶¶ 117, 120, 132-33.)

Mr. Barbieri brings seven claims against the United States under Count I: invasion of privacy, intentional infliction of emotional distress, malicious prosecution, abuse of process, witness intimidation, defamation, and negligence in violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 267, *et seq*. Mrs. Barbieri brings a claim for loss of consortium against the United States in Count II. Finally, in Count III, Mr. Barbieri brings claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against AUSA Eve for alleged violations of the Fifth Amendment, and against Agent Cosgriff for alleged violations of the Fourth and Fifth Amendments.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. While it "does not impose a probability requirement at the pleading stage," plausibility does require "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. City of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "tak[e] note of the elements a plaintiff must plead to

state a claim"; (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claim for which the district court lacks subject matter jurisdiction. A Rule 12(b)(1) motion may challenge jurisdiction based on the face of the complaint or its existence in fact. See Mortensen v. First Fed. Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir 1977). Where, as here, the challenge is facial, the court must accept as true all well-pleaded allegations in the complaint and draw reasonable inferences in favor of the plaintiff. Id.

### III. DISCUSSION

Defendants the United States, AUSA Eve, and Agent Cosgriff have moved to dismiss all claims against them on multiple grounds.

A. The United States' Motion to Dismiss

The United States contends that under Pooler v. United States, 787 F.2d 868 (3d Cir. 1986), the claims against it should be dismissed because the discretionary function exception to the FTCA bars those claims. (Mot., Doc. No. 11, at 6-8.)

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). Among the cases in which the United States has waived its sovereign immunity are those falling within the provisions of the FTCA, which provides for jurisdiction in the district

6

courts over "civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This is the exclusive remedy for persons suffering negligently inflicted injuries at the hands of an employee of the United States acting within the scope of his or her employment. 28 U.S.C. § 2679(b)(1).

This waiver, however, has exceptions. Under 28 U.S.C. § 1680(a), the United States has not waived its immunity for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function" on the part of a federal employee. This exception is known as the "discretionary function exception," and applies "whether or not the discretion involved be abused." Id. The plaintiff bears the burden of demonstrating that his claims fall within the scope of the FTCA's waiver of governmental immunity, but the United States bears the burden of proving the applicability of the discretionary function exception. Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008).

In United States v. Gaubert, the United States Supreme Court developed a two-part test for courts to apply in determining whether the discretionary function exception applies. 499 U.S. at 322-23. First, a court must determine whether the act giving rise to the alleged injury and thus the suit involves an "element of judgment or choice." Id. at 322. If a federal statute, regulation, or policy "specifically prescribes a course of action for an employee to follow," the requirement is not met because "the employee has no rightful option but to adhere to the directive." Id. (quoting Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988)). Second, where the challenged conduct involves an element of judgment or choice, the court must determine

7

"whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. at 322-23. The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325.

Here, Mr. Barbieri contends that the acts performed by AUSA Eve and Agent Cosgriff do not involve "judgment or choice." He alleges that these acts, executed "in connection with the sham investigation and wrongful indictment," constitute invasion of privacy, intentional infliction of emotional distress, malicious prosecution, abuse of process, witness intimidation, defamation, and negligence. These acts include conducting an investigation of Mr. Barbieri "that consisted of Messner's outlandish claims and Defendants' blind and evasive refusal to secure the truth"; delivering a "sham" target letter to Mr. Barbieri; conducting a Grand Jury investigation that was "intentionally premised on false and misleading testimony"; securing an indictment; and "through . . . [an] unannounced and warrantless inspection of Mr. Barbieri's law offices on the midnight hour before trial, violat[ing] Mr. Barbieri's Fourth Amendment rights." (Am. Compl. ¶¶ 110, 117.)

Turning to the first step of Gaubert's two-step inquiry, I disagree with Mr. Barbieri and find that the acts pled involve an element of choice. The conduct described in the Amended Complaint relates to the investigation into Mr. Barbieri and the decision to prosecute him, and such decisions are entirely discretionary. See Pooler, 787 F.2d at 870-71 (finding that investigative methods and a decision to prosecute fall within the discretionary function exception). Indeed, a decision to prosecute that is alleged to have been malicious still falls within the discretionary function exception. See, e.g., Gray v. Bell, 712 F.2d 490, 513-14 (D.C. Cir. 1983) (holding that an FTCA claim was properly dismissed where the claim incorporated a

8

malicious prosecution claim because it "challenge[d] the actual decision to institute prosecution"); Bradley v. United States, 615 F. Supp. 206, 210-11 (E.D. Pa. 1985) (applying Gray in holding that a claim of malicious prosecution falls within the discretionary function); see also Pooler, 787 F.2d at 871 (quoting Gray in finding that a decision to prosecute falls within the discretionary function exception).[1]

Mr. Barbieri's contention that AUSA Eve violated his Fifth Amendment rights, and Agent Cosgriff violated his Fourth and Fifth Amendment rights, does not alter this outcome because constitutional tort claims are not actionable under the FTCA. See F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994). Because constitutional tort claims are not actionable under the FTCA, it follows that the Fourth and Fifth Amendments do not proscribe a course of conduct that a government agent must follow.[2]

---

[1] Mr. Barbieri belabors the point that Messner's deposition and the ensuing 2010 bankruptcy court hearing before Judge FitzSimon were matters of public record and thus the government should have been aware of both of these instances and known Mr. Barbieri was innocent. (Pls.' Resp., Doc. No. 18, at 14.) Whether or not these records were possessed by Agent Cosgriff or AUSA Eve is irrelevant because investigatory decisions and a decision to prosecute are discretionary decisions, and, even assuming the events of the 2010 bankruptcy hearing were exculpatory, there is no requirement to present purportedly exculpatory evidence to the Grand Jury. See United States v. Williams, 504 U.S. 36, 53-55 (1992) ("Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with [the Grand Jury] system.").

[2] Mr. Barbieri asserts that the Supreme Court's decision in Hartman v. Moore, 547 U.S. 250 (2006), demonstrates that the Fourth and Fifth Amendments proscribe a course of conduct that a government official must follow. (Pls.' Resp., Doc. No. 18, at 15.) As is discussed below, the Supreme Court observed in Hartman that a Bivens suit for retaliatory-prosecution brought against a prosecutor cannot stand because they are absolutely immune, but can stand against a "nonprosecutor," like an inspector, who is alleged to have acted in retaliation and successfully induced the prosecutor to bring charges that would otherwise not have been brought. 547 U.S. at 261-62. The Supreme Court did not address the discretionary function exception or the Fourth and Fifth Amendments in Hartman, therefore this case is inapplicable.

Mr. Barbieri also contends that the FBI Guidelines proscribe a course of conduct that FBI agents must follow.³ Those Guidelines, however, are not mandatory regarding the course of action an agent must follow in interviewing witnesses and building a case. FBI agents must make judgment calls with respect to interviewing witness, corroborating information provided by those witnesses, and determining how to use that information in building a case. See generally, Pooler, 787 F.2d at 871 (discussing the extent to which FBI agents who are placed in charge of an investigation must make decisions as to how an investigation will be pursued). The Guidelines provide no criteria as to what constitutes a sufficient "basis for allegations or other pertinent information," how or if an agent must corroborate such a basis, or what "vigorous steps" must be taken to further develop evidence obtained through a witness. While FBI agents may be obligated to take certain investigatory steps, courts have consistently held that a

---

³ The specific sections Mr. Barbieri references are as follows:

> An interview cannot be considered thorough unless the account thereof shows the basis for allegations or other pertinent information furnished by the source during the interview. Only with the benefit of these important details can the information be fully and properly evaluated. Statements or allegations may not be accepted without inquiring of the source as to how source acquired such information, or as to the basis for beliefs or opinions he/she might express. If his/her information is based on hearsay, an effort must be made to identify the original source and to interview that source if feasible to do so. . . .

> Derogatory data developed through interviews of witnesses and sources must be completely approved or disproved and accurately and factually established as applicable to the person under investigation. The danger of relying upon information obtained from one source is obvious and vigorous steps must be taken to further develop such cases through evidence obtained through other sources and from various investigative techniques. Beware of being misled by circumstantial evidence and guard against incomplete interviews or overeager witnesses who deviate from telling what they actually know to what they erroneously feel the FBI is desirous of obtaining.

(Am. Compl. ¶ 78) (citing FBI Manual of Investigative Operations and Guidelines, Part II, Vol., §§ 7-5, 7-7.)

government agent's performance of an obligation requires that agent to make judgment calls, and thus the discretionary function exception applies to such decisions. See, e.g., Gonzalez v. United States, 814 F.3d 1022, 1028 (9th Cir. 2016) (holding that an FBI agent's decision whether or not to disclose information regarding potential threats is discretionary); Ochran v. United States, 117 F.3d 495, 500-01 (11th Cir. 1997) (holding that the discretionary function exception applies to an AUSA's decision as to how to protect a victim because "[e]ven though the [Attorney General] Guidelines require the AUSA to arrange for the reasonable protection of a victim who is threatened," they do not specify how this protection is to be provided).

Regarding the second prong of the Gaubert analysis, that is, whether the judgment "is of the kind that the discretionary function was designed to shield," the Supreme Court has noted that "the basis for the discretionary function exception was Congress' desire to 'prevent judicial second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Berkovitz, 486 U.S. at 536-37 (quoting United States v. Varif Airlines, 467 U.S. 797, 814 (1984)). Because an FBI agent's investigatory decisions and a decision to prosecute are determinations that are policy-based in nature, I find that the conduct of AUSA Eve and Agent Cosgriff is the type that the discretionary function exception was designed to shield. See Kelly v. United States, 924 F.2d 355, 362 (1st Cir. 1991) (finding that decisions to investigate are "at the core of law enforcement activity" and therefore the type of conduct that the discretionary function exception was designed to safeguard); Pooler, 787 F.2d at 871 (finding that an FBI agent's investigatory decisions and a decision to prosecute fell within the discretionary function exception); Woods v. United States, No. 07-593, 2007 WL 3243852, at *3-4 (D.N.J. Nov. 1, 2007) (finding an FBI agent's decisions to investigate a gang and use an informant and undercover operation fall within the discretionary function exception).

Mr. Barbieri also argues that the discretionary function exception does not apply here because the Amended Complaint falls within an exception noted in Pooler. (Pls.' Resp., Doc. No. 18, at 12-13.) There, two plaintiffs brought actions against the United States under the FTCA, alleging they were falsely arrested as a result of a flawed investigation. 787 F.2d at 869. The plaintiffs alleged the FBI agent who investigated the case depended on an unreliable informant and failed to corroborate information provided, and that the charges were not filed in good faith. Id. The United States Court of Appeals for the Third Circuit found that the FBI agent's investigation decisions were discretionary, reasoning that the agent "was placed in charge of an investigation, and was required to decide how that investigation would be pursued . . . [which] required consideration of the use and availability of potential informants, and of the competing uses of personnel who might be needed for surveillance." Id. at 871. Additionally, the Third Circuit found the FBI agent's decision to file complaints with the Pennsylvania authorities to be a prime example of a discretionary function because "[p]rosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of government discretion." Id. (quoting Gray, 712 F.2d at 513).

Mr. Barbieri focuses on language in Pooler where the court states that "if the complaint were that agents of the government in the course of an investigation had violated constitutional rights or federal statutes, the outcome would be different since federal officials do not possess discretion to commit such violations." Id. However, the Supreme Court has since held that constitutional tort claims are not actionable under the FTCA. F.D.I.C., 510 U.S. at 477-78 (plaintiff's FTCA claim must be based on a state-law tort claim and cannot be based on a federal constitutional or statutory claim against the government); see also Lozada v. United States, No. 07-4740, 2008 WL 2152051, at *4 (E.D. Pa. May 21, 2008) (rejecting plaintiff's argument that

the discretionary function exception was inapplicable where constitutional violations had been alleged because "[c]onstitutional tort claims are not actionable under the FTCA").

Accordingly, I find that the conduct of which Mr. Barbieri complains satisfies both prongs of Gaubert and therefore falls within the discretionary function exception to the FTCA. Therefore, I will grant the United States' motion. Because I am dismissing Mr. Barbieri's claims against the United States, Mrs. Barbieri's loss of consortium claim must also be dismissed. See Jensen v. United States, No. 09-2977, 2009 WL 4117357, at *3 (E.D. Pa. Nov. 24, 2009) (stating that "[u]nder Pennsylvania law, a non-injured spouse may not prevail on a loss of consortium claim unless the injured spouse prevails on his or her own personal injury claim") (citing Barchfield v. Nunley, 577 A.2d 910, 912 (Pa. Super. Ct. 1990)).[4]

B. The Individual Defendants' Motion to Dismiss – AUSA Eve

AUSA Eve argues that the Fifth Amendment claims against her should be dismissed because she is entitled to absolute immunity as a prosecutor. (Mot., Doc. No. 12, at 11-12.) Mr. Barbieri responds that a prosecutor is not entitled to absolute immunity for administrative or investigatory actions, and here AUSA Eve "acted in concert with Detective Cosgriff during all stages of the 'investigation' into Mr. Barbieri." (Pls.' Resp., Doc. No. 17, at 18-20.)

Prosecutors are entitled to absolute immunity for "actions performed in a quasi-judicial role." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (internal citations omitted) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This includes actions taken in court as well as "selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." Id. (citing Imbler, 424 U.S. at 430). For example, prosecutors are entitled to immunity for conduct before a Grand Jury. See Burns v. Reed, 500 U.S. 478, 490 (1991).

---

[4] The United States raises other arguments that appear to be meritorious, however, I need not discuss those matters because the claims are sufficiently barred by the discretionary function exception to the FTCA.

On the other hand, a prosecutor's investigative or administrative actions are protected only by qualified immunity. Id. To distinguish between actions intimately associated with the judicial phase of litigation and actions that are investigative or administrative in nature, courts apply a "functional approach," which "looks to the nature of the function performed not the identity of the actor who performed it." See Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (internal citations and quotation marks omitted) (finding that absolute immunity does not attach where a prosecutor acts in an administrative capacity searching for clues and corroborative evidence that would lead to probable cause to recommend an arrest); Burns, 500 U.S. at 494-95 (finding that absolute immunity does not attach where a prosecutor offers legal advice to the police regarding interrogation practices).

Here, the Amended Complaint alleges that AUSA Eve violated Mr. Barbieri's Fifth Amendment rights when she (1) sent Mr. Barbieri a deficient target letter with insufficient notice prior to his indictment, and (2) made misrepresentations during a presentation to the Grand Jury and "solicited misrepresentations" from Agent Cosgriff. (Am. Compl. ¶ 133.) Regarding the deficient target letter, the Supreme Court has found that a target of a Grand Jury investigation does not have a constitutional right to be informed of his target status. United States v. Washington, 431 U.S. 181, 189 (1977) ("Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of Fifth Amendment rights."); see also United States v. Myers, 123 F.3d 350, 354 (6th Cir. 1997) (citing Washington in finding that plaintiff had no constitutional right to a target letter). Thus, there is no Fifth Amendment right to receive a more detailed target letter.

As to the misrepresentations made during a Grand Jury session, presenting to a Grand Jury is an act undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and thus is protected by absolute immunity. See Burns, 500 U.S. at 485 (observing that in Imbler, the Supreme Court extended absolute immunity to "the knowing use of false testimony before the grand jury"); Andors v. Gross, 294 F. App'x 731, 734 (3d Cir. 2008) (finding that prosecutors were protected by absolute immunity for their presentation to the Grand Jury).

Mr. Barbieri points to Fields v. Wharrie, 740 F.3d 1107 (7th Cir. 2014), and Nero v. Mosby, Nos. 16-2663, 16-1288, 16-1304, 16-2663, 2017 WL 68643 (D. Md. Jan. 6, 2017), in support of his position that AUSA Eve is not entitled to absolute immunity. In Fields, the prosecutor was not entitled to absolute immunity where he was alleged to have procured false statements from a prospective witness pre-prosecution, which the United States Court of Appeals for the Seventh Circuit found to be action taken by prosecutors in a "purely investigative role." 740 F.3d at 1112. In Nero, the prosecutor was not entitled to absolute immunity where he was alleged to have knowingly provided false advice to a police officer as to the existence of probable cause, conducted his own investigation independent of the police investigation into the case, and made comments to the media constituting defamation and invasion of privacy. 2017 WL 68643, at *13-15. The prosecutor was, however, entitled to absolute immunity for allegedly causing false and misleading evidence to be presented to the Grand Jury. Id. at *14. Here, the Amended Complaint does not allege that AUSA Eve engaged in any of the conduct for which the prosecutors in Fields and Nero were not entitled to absolute immunity.

Accordingly, I find that there is no Fifth Amendment right to a target letter and that AUSA Eve is entitled to absolute immunity for Grand Jury presentation. I will therefore dismiss the Fifth Amendment claims against her.[5]

C. The Individual Defendants' Motion to Dismiss –Agent Cosgriff

  *i. Fifth Amendment Claim*

Agent Cosgriff contends that pursuant to Rehberg v. Paulk, 566 U.S. 356 (2012), the Fifth Amendment claim against him should be dismissed because he is entitled to absolute immunity as a witness before the Grand Jury. (Mot., Doc. No. 12, at 12-13.) Mr. Barbieri responds that the facts here are distinguishable from Rehberg because Agent Cosgriff and AUSA Eve "colluded as one vendetta-fueled investigative unit from the very outset of the investigation into [Mr. Barbieri], then proceeded to present fabricated evidence and material omissions and misrepresentations resulting from that investigation to the grand jury." (Pls.' Resp., Doc. No. 17, at 22.)

In Rehberg, the Supreme Court held that Grand Jury witnesses are entitled to the same immunity as witnesses at trial. 566 U.S. at 369. "This rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." Id.

---

[5] Although Mr. Barbieri argues in his response that his claims against AUSA Eve are related to her role in the investigation of his case, he has not pled such in the Amended Complaint. Rather, he cites AUSA Eve's sending of the target letter and alleged conduct before the Grand Jury as the bases for his claims against her. (See Am. Compl. ¶ 133.) Furthermore, even if Mr. Barbieri pled such, the Supreme Court has found that when a prosecutor "functions as an administrator rather than as an officer of the court," she is entitled to qualified immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 n.33 (1976)).

Here, the Amended Complaint alleges that Agent Cosgriff violated his Fifth Amendment rights by "lying and making misrepresentations" during the government's presentation to the Grand Jury, which led to Mr. Barbieri's indictment. (Am. Compl. ¶ 132.) The Amended Complaint does not contain any facts to substantiate Mr. Barbieri's argument that AUSA Eve and Agent Cosgriff "colluded as one vendetta-fueled investigative unit." Mr. Barbieri's argument that Agent Cosgriff's testimony should not be protected because it was part of the "sham investigation" he and AUSA Eve performed fails because as the Supreme Court said in Rehberg, the rule that Grand Jury witnesses are entitled to immunity cannot be circumvented by an allegation that the testimony was part of a larger conspiracy. 566 U.S. at 369. Accordingly, I find that Agent Cosgriff is entitled to absolute immunity for his testimony before the Grand Jury and will therefore dismiss Mr. Barbieri's Fifth Amendment claim against Agent Cosgriff.

  *ii. Fourth Amendment Claim*

Finally, Agent Cosgriff argues that Mr. Barbieri's Fourth Amendment claim regarding conducting a "sham investigation" should be dismissed because there is no constitutional right to be free of investigation, and therefore Agent Cosgriff is entitled to qualified immunity. He also contends that Mr. Barbieri's Fourth Amendment claim regarding his appearance at Mr. Barbieri's office should be dismissed because Mr. Barbieri has failed to allege facts stating a Fourth Amendment violation. (Mot., Doc. No. 12, at 20-22.) Mr. Barbieri responds that Agent Cosgriff is not entitled to qualified immunity because Mr. Barbieri's "rights were clearly established, as such conduct has been specifically addressed by the Supreme Court in Bivens, Hartman, and addressed by courts in other cases including Fields and Nero." Mr. Barbieri does not specify which rights he believes are clearly established, but again asserts that "Defendant

Cosgriff conducted a warrantless and intrusive search of [his] law office." (Pls.' Resp., Doc. No. 17, at 22-24.)

Government officials are extended qualified immunity in actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Id. at 1245 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). A court must engage in a two-part inquiry to determine if qualified immunity applies: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly' established at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Mr. Barbieri's position that Agent Cosgriff is not entitled to qualified immunity because his rights are "clearly established," as "such conduct" has been addressed by the Supreme Court in Bivens and Hartman, and other courts in Fields and Nero, is unavailing. In Hartman v. Moore, the Supreme Court held that a Bivens suit for retaliatory prosecution brought against a prosecutor cannot stand because they are absolutely immune, but can stand when brought against a "nonprosecutor," like an inspector, who is alleged to have acted in retaliation and successfully induced the prosecutor to bring charges that would otherwise not have been brought. 547 U.S. 250, 261-62 (2006). But, the Supreme Court did not decide whether "simply conducting a retaliatory investigation with a view to promote prosecution is a constitutional tort." Id. at 262

18

n.9. The Amended Complaint does not allege any facts to suggest that Agent Cosgriff acted in retaliation and induced AUSA Eve to prosecute him, thus Hartman is inapplicable here.

Mr. Barbieri's reliance on Nero is misplaced, as the court in that case addressed a prosecutor's absolute immunity and qualified immunity with respect to the right to be free from arrest without probable cause. 2017 WL 68643, at *13-15. Agent Cosgriff is not a prosecutor and has not been alleged to have arrested Mr. Barbieri without probable cause. Mr. Barbieri's reliance on Fields is similarly inappropriate as that case addressed a prosecutor's absolute and qualified immunity. 740 F.3d at 1112. Finally, the Supreme Court did not reach the issue of immunity in Bivens. 403 U.S. at 388. Mr. Barbieri has not cited to any authority establishing that the factual allegations pled here constitute an established Fourth Amendment violation.

Rather, regarding the allegation that Agent Cosgriff violated Mr. Barbieri's Fourth Amendment rights by conducting a "sham investigation," three circuit courts have held that there is no constitutional right to be free of investigation. See Rehberg v. Paulk, 611 F.3d 828, 850 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012) (finding there is no clearly established right to be free from investigation, even if it is retaliatory); United States v. Trayer, 898 F.2d 805, 808 (D.C. Cir. 1990) (observing there is no constitutional right to be free of investigation); United States v. Jacobson, 916 F.2d 467, 469 (8th Cir. 1990), *rev'd on other grounds*, 503 U.S. 540 (1992) (holding that a defendant has no constitutional right to be free of investigation). As I agree with these decisions, I need not proceed to the second step of the qualified immunity analysis.

As to the allegation that Agent Cosgriff violated Mr. Barbieri's Fourth Amendment rights by performing a warrantless and intrusive search of his office, the Fourth Amendment establishes that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. Government

conduct may constitute a "search" (1) where "the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action"; or (2) "where the government unlawfully, physically occupies private property for the purpose of obtaining information." Free Speech Coal., Inc. v. Attorney Gen. of U.S., 677 F.3d 519, 543 (3d Cir. 2012) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)).

Here, the Amended Complaint alleges that Agent Cosgriff "appeared at Mr. Barbieri's office without notice or warrant in violation of [his] Fourth Amendment rights" seventy-two hours before trial began, and "began interviewing [his] employees." It also alleges that Agent Cosgriff "knew or should have known that [he] would be preparing for trial and that documents, evidence and exhibits would be compromised by the random and unannounced appearance." (Am. Compl. ¶¶ 102-03.)

Mr. Barbieri has not cited to any authority establishing that the mere appearance of a government official at his office or the interviewing of his employees constitutes a Fourth Amendment violation. The allegation pertaining to Agent Cosgriff's knowledge that his appearance would compromise evidence and exhibits does not state a Fourth Amendment violation. Accordingly, I need not proceed to the second step of the qualified immunity analysis and find that Agent Cosgriff is entitled to qualified immunity for the Fourth Amendment claim.[6]

An appropriate Order follows.

---

[6] AUSA Eve and Agent Cosgriff also argue that I should not extend Bivens liability to this case's limited context. (Mot., Doc. No. 12, at 6.) Because I find that both individual Defendants are entitled to immunity, and thus cannot be personally liable for damages, I need not address the Bivens issue.